UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
GRIZEL I. MIRANDA o/b/o       :
J.A.F.                        :
                              :
v.                            : Civil No. 3:16CV00887 (HBF)
                              :
NANCY A. BERRYHILL, ACTING    :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :        December 4, 2017
                              :
------------------------------x
```

**RULING ON CROSS MOTIONS**

Grizel I. Miranda ("Miranda") brings this action on behalf or her son, J.A.F., pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her claims for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act, ("the Act"). Plaintiff has moved to reverse the Administrative Law Judge's ("ALJ") decision and declare the claimant disabled. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Reversal of Commissioner's Decision **[Doc. #30]** is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **GRANTED**.

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff filed an application on behalf of her minor son for

1

SSI on August 10, 2012, with an alleged disability onset date of July 16, 2012. [Certified Transcript of the Record, Compiled on July 29, 2016, Doc. #25 (hereinafter "Tr.") 10; 197]. Plaintiff's claims were denied initially and on reconsideration. [Tr. 10, 72, 79, 91].

On November 4, 2014, plaintiff, represented by counsel, appeared before ALJ Ryan A. Alger for an administrative hearing. [Tr. 45-71]. The claimant J.A.F. also testified at the hearing. [Tr. 47-52]. On December 15, 2014, ALJ Alger found that J.A.F. was not disabled, and denied the claim. [Tr. 7-25]. The Appeals Council denied plaintiff's request for review on April 6, 2016. [Tr. 1-5]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision.

II. **STANDARD OF REVIEW**

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would

accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial

3

evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that, in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d

4

Cir. 2013)(citations omitted)(emphasis in original).

**III. SSA LEGAL STANDARD**

A child under the age of eighteen will be considered disabled if it can be shown that he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i).

The Social Security Administration ("SSA") has devised a three-step process for hearing officers to use in determining whether a child is disabled under the Code of Federal Regulations (the "Regulations"). 20 C.F.R. §416.924(a). At step one, the hearing officer is charged with determining whether the claimant is engaged in "substantial gainful activity," id., which is defined as "work activity that involves doing significant physical or mental activities" typically in exchange for "pay or profit." 20 C.F.R. §416.972(a)-(b). If the claimant is not engaging in substantial gainful activity, then the hearing officer may proceed to step two, at which the hearing officer must determine whether the claimant has "an impairment or combination of impairments that is severe." 20 C.F.R. §416.924(a). If the claimant is found to have a severe impairment or a combination of severe impairments, the analysis

proceeds to the third step, at which point the hearing officer must determine whether the claimant has an impairment or combination of impairments that "meets, medically equals, or functionally equals" a presumptively disabling condition found within the Regulations' listings of impairments (the "Listings"). Id.; see also 20 C.F.R. pt. 404, subpt. P, app. 1.

A child's functional limitations are evaluated pursuant to criteria set forth in the following six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1)(i)-(vi). A medically determinable impairment or combination of impairments is considered to functionally equal a condition in the Listings if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. §416.926a(a). A marked limitation is characterized in the Regulations as any limitation that is "more than moderate but less than extreme." Id. §416.926a(e)(2)(i) (internal quotation marks omitted). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately,

effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00(C). In considering how well a child is functioning in a given domain, adjudicators will compare a child's functioning to "a typical functioning of children your age who do not have impairments." 20 C.F.R. §416.926a(f).

## IV. THE ALJ'S DECISION

Following the above-described three step evaluation process, ALJ Algers concluded that J.A.F. was not disabled under the Social Security Act. [Tr. 7-25]. The ALJ first noted that J.A.F., born 2009, was a preschool age child during the relevant period. [Tr. 13]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 10, 2012, the application date. [Tr. 13].

At step two, the ALJ found that attention deficit disorder (ADD), post-traumatic stress disorder (PTSD), and mood disorder were severe impairments. [Tr. 13-14].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 14].

Because J.A.F. did not have an impairment that met or medically equaled a listed impairment, the ALJ evaluated J.A.F.'s limitations to determine whether they were functionally equivalent to a listed impairment [Tr. 14-25]. The ALJ

7

considered the six domains of functioning and concluded that
J.A.F. had:

- A less than marked limitation in Acquiring and Using Information;
- A less than marked limitation in Attending and Completing Tasks;
- A marked limitation in Interacting and Relating with Others;
- No limitation in Moving About and Manipulating Objects;
- A less than marked limitation in Caring for Yourself; and
- A less than marked limitation in Health and Physical Well-Being.

[Tr. 14-25]. As a result of these findings the ALJ found that J.A.F. was ineligible to receive SSI benefits.

**V. DISCUSSION**

On appeal, plaintiff contends that the ALJ's determination that J.A.F. had a "less than marked" limitation in the domains of "attending and completing tasks" and "caring for yourself" is not supported by substantial evidence of record.

**A. "Attending and Completing Tasks" Determination**

The domain of attending and completing tasks is focused principally on assessing the degree to which a child can "focus and maintain ... attention, and ... begin, carry through, and

finish ... activities ... including the pace at which [a child] performs the activities and the ease with which [he or she] can change them." 20 C.F.R. §416.926a(h). In assessing a preschool-age child, (age 3 to the attainment of age 6), the regulations state that:

> As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

20 C.F.R. §416.926a(h)(2)(iii); see also Social Security Ruling ("SSR") 09-4p, 2009 WL 396033 (S.S.A. Feb. 18, 2009); [Tr. at 21].

Plaintiff contends that the ALJ erred in finding a "less than marked" limitation in the domain of attending and completing tasks, arguing that the ALJ misread the evidence and overemphasized a select few facts to the exclusion of overwhelming and compelling evidence. [Doc. #30-1 at 12-14]. The Court finds that the ALJ's finding is supported by substantial evidence of record.

First, the ALJ properly assigned "significant weight" to the co-signed opinions of State agency psychological consultant Dr. Pamela Fadakar and State agency speech language pathologist

9

Elaine Siegel that J.A.F. had only a "less than marked" impairment in attending and completing tasks, Tr. 19 (citing Tr. 101), and assigned "significant weight" to consultative examiner Dr. Judith Mascolo's finding that J.A.F. could follow simple, one-step instructions. Tr. 19, 21 (citing Ex. 664-65). Plaintiff does not challenge any of the opinion evidence relied on by the ALJ. See Doc. #30-1 at 12-14.

The ALJ properly considered, and accorded "some weight", to Heather Lasky's teacher questionnaire dated February 25, 2013, in which Ms. Lasky rated J.A.F.'s functioning in 13 categories relevant to the domain of attending and completing tasks. Tr. 21 (citing Tr. 280). At the time the questionnaire was completed, J.A.F. was receiving 2 hours of special education a week from Ms. Lasky. Tr. 279. Ms. Lasky did not assess the highest functionally limiting rating of "a very serious problem" in any of the 13 areas. Tr. 280. She assessed a "serious problem," in the second most limiting rating, in only three areas: refocusing to task when necessary, carrying out multi-step instructions and waiting to take turns. Id. In the remaining 10 areas, Ms. Lasky assessed ratings ranging from "a slight problem" (paying attention when spoken to directly, carrying out single-step instructions, and changing from one activity to another), to "no problem" (sustaining attention during play/sports and working at reasonable pace/finishing on time). Id.

10

The ALJ also addressed other evidence of record in consideration of this domain, including J.A.F.'s improved academic performance over time; J.A.F.'s ability to perform tasks such as completing various mazes; connecting dots; cutting out a circle; folding paper; copying designs; and building a tower; feeding himself; putting away toys; riding a bike; and watching movies and television." [Tr. 19 (citing Tr. 393); Tr. 21 (citing 236, 248, 286-313; 384, 390-95, 399-400, 464-66, 633-38); see also Tr. 60 (plaintiff testifying that J.A.F. sustained concentration from 15 to 20 minutes when playing video games); see 20 C.F.R. §416.926a(h)(2)(iii); see also Social Security Ruling ("SSR") 09-4p, 2009 WL 396033 (S.S.A. Feb. 18, 2009).

The ALJ correctly noted that plaintiff reported that her son had an "average academic performance" during an August 2014 intake interview. Tr. 21 (citing Ex. 14F, Tr. 769). The ALJ also considered the PPT from October 2014, noting that there was "no change in the recommended amount of special education" and that "all of the areas of function were rated as 'age appropriate' except in some areas of math and language arts." Tr. 17 (citing Ex. 23E (Tr. 467-79).

Similarly, the ALJ did not err in finding that the "lack of consistent medication use [was] also a factor given the mother's admission at the hearing that medication helps with his focus and behavior." Tr. 21; Tr. 19-20 (ALJ finding that J.A.F. was

11

not consistently on medication during the relevant period (citing Ex. 5E (Tr. 251) (August 2012, ADL Questionnaire completed by the mother indicating that J.A.F. was not taking medication), 18E (Tr. 327) (undated report to SSA completed by the mother stating, "no prescription presently but in the near future he will be taking meds."), 14F (Tr. 765-64)(In a discharge summary dated August 2014, from Community Mental Health Affiliates ("CMHA"), it was noted that J.A.F. was discharged on July 18, 2014, due to "lack of participation in psychotherapy due to location," adding that, "[w]ithout the recommended treatment, client's reported behaviors are not anticipated to change, resulting in on-going discord at home."); see Tr. 55 (mother testifying on November 4, 2014, that J.A.F. "was seen by a specialist on October 14. She raised up the milligrams on the Focalin, and it is working."); Tr. 63 (mother testifying J.A.F. is "more calmer, more relaxed, when he's on his medication."). Plaintiff argues that the ALJ's citation to Ex. 14F "expressly contradicts the assertion that the Claimant's shortcomings in this area of functioning was due to inconsistent use of medication." [Doc. #30-1 at 13 (citing Tr. 766 "Family has difficulty managing behavior despite compliance with medication.")]. However, the clinician made this note on March 20, 2014, during the intake assessment at CMHA, under the heading "Reason for Seeking Treatment." Tr. 766. At that time,

12

the mother also indicated that she was seeking treatment for medication management. Id. J.A.F. attended psychotherapy at CMHA three times, April 10, May 15 and 29, 2014, before he was discharged from care on July 18, 2014, due to lack of participation. Tr. 790-92; 787-89; 783-86. Tr. 280-82. There is no indication in the treatment records, nor has plaintiff cited to any entries, showing that J.A.F. was on medication while treating at CMHA. See Tr. 791 (medication compliance "NA"); Tr. 788 (same); Tr. 784 (same); Tr. 781 (same). The Court finds no error on this record.

It is apparent that the ALJ reviewed the entire record. Tr. 15-19. Plaintiff has not identified how the ALJ's finding that J.A.F. did not have "marked" limitations in the domain of "attending and completing tasks" is error. As set forth above, the ALJ relied on evidence of record and followed the criteria set forth in the regulations for assessing a preschool child. 20 C.F.R. §416.926a(h)(2)(iii). Instead, plaintiff selectively lists evidence from the ALJ's decision that she contends shows that his decision is not supported by substantial evidence. [Doc. #30-1 at 14 (citing Tr. 15-19)]. This recitation of alternative evidence does not overcome the ALJ's reliance on opinion evidence in the record and other records that support his assessment of a "less than marked" limitation in this domain. "[W]hether there is substantial evidence supporting the

13

appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted)(emphasis in original).

Accordingly, the ALJ's finding that J.A.F. had a "less than marked" limitation in the domain of "attending and completing tasks" is supported by substantial evidence.

**B.    "Caring for Yourself" Determination**

Plaintiff also argues that the ALJ erred in his finding that J.A.F. had a "less than marked" limitation in the domain of caring for yourself. [Doc. #30-1 at 14-17]. She argues that the ALJ "focused on a narrow aspect of this domain of functioning"; "ignored the consistent and persistent evidence"; swept "away the abundant proof of this incapacity"; and "misread[] ... the evidence concerning the Claimant's medication compliance." [Doc. #30-1 at 14-16].

The domain of caring for yourself,

> consider[s] how well [a child] maintain[s] a healthy emotional and physical state, including how well [a child] gets [his or her] physical and emotional wants and needs met in appropriate ways; how [a child] cope[s] with stress and changes in [his or her] environment; and whether [a child] take[s] care of [his or her] own health, possessions, and living area.

20 C.F.R. §416.926a(k).

In assessing a preschool-age child, (age 3 to the attainment of age 6), the regulations state that:

> You should want to take care of many of your physical
> needs by yourself (e.g., putting on your shoes,
> getting a snack), and also want to try doing some
> things that you cannot do fully (e.g. tying your
> shoes, climbing on a chair to reach something up high,
> taking a bath). Early in this age range, it may be
> easy for you to agree to do what your caregiver asks.
> Later, that may be difficult for you because you want
> to do things your way or not at all. These changes
> usually mean that you are more confident about your
> ideas and what you are able to do. You should also
> begin to understand how to control behaviors that are
> not good for you (e.g., crossing the street without an
> adult).

20 C.F.R. §416.926a(k)(2)(iii); see also, SSR 09-7p, 2009 WL 396029, at *2 (S.S.A. Feb. 17, 2009)("[i]n 'Caring for Yourself,' we focus on how well a child relates to self by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments.").

As set forth above, the ALJ properly assigned "significant weight" to the co-signed opinions of State agency psychological consultant Dr. Pamela Fadakar and State agency speech language pathologist Elaine Siegel that J.A.F. had only a "less than marked" impairment in the domain of caring for yourself. Tr. 19, 24 (citing Tr. 102). The ALJ also noted other evidence in the record which reflected that although J.A.F. had some issues with hygiene and dressing, he only required a "moderate" or a "minimal" level of assistance. Tr. 24 (citing Tr. 638); see also Tr. 58 (mother testified that J.A.F. requires some

15

assistance/oversight with hygiene and dressing). "[I]t is common for all children to experience some difficulty in this area from time to time,...." SSR 09-7p, 2009 WL 396029, at *2. Plaintiff testified that her son followed her direction to put away his clothes/laundry and toys. Tr. 60-61. She also testified that she has never been called to the school to bring her son home. Tr. 68. While plaintiff testified that J.A.F. had behavioral problems on the bus, the record shows that it occurred on three occasions, March 28, April 4 and 28, 2014, during a period when J.A.F. was not receiving consistent medication or treatment at CMHA. Tr. 669, 674, 681 (handwritten diary from J.A.F.'s teacher Mrs. Katetski); see also Tr. 766-79 (3/20/14 initial evaluation at CMHA); Tr. 790-92 (4/10/14-CMHA treatment); Tr. 787-89 (5/15/14-CMHA-treatment); Tr. 783-82 (5/29/14-treatment); Tr. 766-79 (7/18/14-discharge due to lack of participation). Review of a diary prepared by Mrs. Katetski, J.A.F.'s teacher, from March through June 2014, also contains several entries that he was having a "good" or "great" day, Tr. 670, 671, 673, 674, 677, 678 ("better day"), 679, and he was able to follow the rules, sometimes with prompting. Tr. 668, 670, 671, 672.

The ALJ correctly noted that although the record contained reports of "self-harm due to anger, none of these instances resulted in a need for emergency treatment." Tr. 24; see Swianteck v. Comm'r of Soc. Sec., 588 F. App'x 82, 83-84 (2d

16

Cir. 2015)(affirming ALJ's finding that child was not markedly impaired in her ability to care for herself, despite "several instances in which she made suicidal gestures and remarks, the contemporaneous notes of her own treating physicians describe [the child] during these events as 'attention seeking' or as making a 'situational threat' with no evidence of 'acute lethality that would warrant acute inpatient care.'"). As set forth above, the Court finds no error with the ALJ's finding that "given that medication use had been admitted to make him calmer, the lack of consistent use of medication is a factor." Tr. 24; see Swianteck, 588 F. App'x at 85 (noting that "the ALJ emphasized the lack of restrictions placed on the claimant by the treatment doctor and observed that [the child] has not generally received the type of medical treatment that one would expect for a totally disabled individual.").

The Court has considered plaintiff's cases and evidence and finds them unavailing. Again, it is not enough that there may be substantial evidence to support the plaintiff's view; rather, the question is whether "substantial evidence supports the ALJ's decision." Bonet ex rel. T.B., 523 F. App'x at 59.

The Court finds that the ALJ's reliance on the State Agency opinions, as well as evidence of record, provides substantial evidence to support his finding of a "less than marked" limitation in the domain of caring for yourself. See Burgess v.

<u>Astrue</u>, 537 F.3d 117, 127 (2d Cir. 2008) ("Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted)).

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Reversal of Commissioner's Decision **[Doc. #30]** is **DENIED.** Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **GRANTED**.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #24] on March 29, 2017, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport this 4th day of December 2017.

\_\_\_/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE